**BURDETT OXYGEN COMPANY OF CLEVELAND, INC., Plaintiff-Appellant,**

v.

**EMPLOYERS SURPLUS LINES INSURANCE COMPANY, Defendant-Appellee.**

No. 19322.

United States Court of Appeals Sixth Circuit.

Dec. 10, 1969.

Marvin L. Karp, Cleveland, Ohio, Jordan C. Band, Ulmer, Berne, Laronge, Glickman & Curtis, Cleveland, Ohio, on brief, for appellant.

John E. Martindale, Cleveland, Ohio, Sheldon S. Reynolds, Arter & Hadden, Cleveland, Ohio, on brief, for appellee.

Before EDWARDS, CELEBREZZE and COMBS, Circuit Judges.

CELEBREZZE, Circuit Judge.

This appeal is brought by the insured to recover actual business interruption loss sustained by it. The District Court

**248**

for the Northern District of Ohio, Eastern Division, granted the Appellees motion for summary judgment on the ground that the stipulated damage was expressly excluded by the insurance policy.

The parties stipulated that on May 3, 1966, a fracture occurred in the crankshaft of a motor driven air compressor owned by Appellant. This breakdown of machinery caused the Appellant's facility to be shut down until the machinery could be repaired. The only direct physical damage to tangible property was to the air compressor.

The parties further stipulated the actual loss sustained by Appellant resulting from the interruption and extra expense was $42,637.01; and that the amount recoverable in the event of a ruling for the Appellant would be $37,637.-01, together with interest thereon at the rate of six per cent per annum from March 11, 1967, the date when the award of the appraisers was determined and filed. The difference between the actual appraised loss and the amount recoverable is due to the existence of a $5,000.00 "deductible" provision in the policy of insurance.

The policy of insurance that is the subject of the instant case contains two basic sections.

The first, known as the Difference of Conditions Form,[1] insured the Appellant's real and personal property against "all risks of direct physical loss of or damage to the property insured," subject to certain specific exceptions for which the insurer offers no coverage. This basic policy, being one for physical damage to tangible property, provides no coverage for business interruption losses. The second section of the policy is an endorsement [2] insuring Appellant against loss from "business interruption," and "extra expense" related thereto, "caused by damage to * * * property * * * by the perils insured against."

The sole question on appeal is whether this second section of the policy insured the Appellant's business interruption losses, and extra expenses related thereto, when the sole damage to real or personal property of the Appellant was caused by mechanical breakdown.

In construing the coverage of the business interruption endorsement, the language of the parties should be given its plain and ordinary meaning. Foote Mineral Co. v. Maryland Casualty Co., 173 F.Supp. 925 (D.C.Tenn.) aff'd 277 F.2d 452 (6th Cir.), cert. denied 364 U.S. 818, 81 S.Ct. 49, 5 L.Ed.2d 48 (1959). American Alliance Ins. Co. v. Keleket X-Ray Corp., 248 F.2d 920 (6th Cir.1957). See also, Annot. 17 Am.Jur. 2d Contracts § 245 at 634–635 and 83 A. L.R.2d 885, 895.

In determining the plain meaning of an insurance contract, the contract should be read as a whole and each word given its appropriate meaning, if possible. Significant variations in the language employed should be attributed their reasonable and logical meaning. Farmers' National Bank v. Delaware Insurance Co., 83 Ohio St. 309, 337, 94 N. E. 834 (1911), Annot., 83 A.L.R.2d 885, 896. See, American Alliance Ins. Co. v. Keleket X-Ray Corp., 248 F.2d 920 (6th Cir.1957).

In those instances where the wording of an insurance contract is doubtful or ambiguous, the contract is construed in a manner most favorable to the insured. The basis of this rule is that the insurer—who formulates the insurance contract and proffers it to the insured for the ostensible benefit of the insured in the event of a loss—is responsible for the language employed. Furthermore, the purpose of the contract being to provide insurance coverage, an interpretation of doubtful terms which construes the language to provide such coverage tends to effectuate the

1. See Appendix "Difference of Conditions Form".

2. See Appendix "Endorsement".

presumed good faith intent of the contracting parties. Munchick v. Fidelity & Casualty Co. of N. Y., 2 Ohio St.2d 303, 209 N.E.2d 167 (1965), and Peterson v. Nationwide Mutual Ins. Co., 175 Ohio St. 551, 197 N.E.2d 194 (1964). *See also* Chavers v. St. Paul Fire & Marine Ins. Co., 295 F.2d 812 (6th Cir. 1961).

Turning now to the instant insurance policy and endorsement, we find that the parties have contracted for a limited indemnification at Appellant's facility. The endorsement states:

"1.   Business Interruption

A.   Subject to all its provisions and stipulations, *this policy covers against loss* resulting directly from necessary interruption of business *caused by damage to* or destruction of real or personal *property*, except finished stock, *by the peril(s) insured against.* (Emphasis added)

\*     \*     \*     \*     \*     \*

"4.   Extra Expense

A.   Subject to all its provisions and stipulations, this policy covers the necessary *Extra Expense,* as herein defined, incurred by the insured in order to continue as nearly as practicable the normal operation of the business, *immediately following damage to or destruction of the building or contents thereof, by perils insured against.* \* \* \* (Emphasis added.)

The scope of coverage of business interruption losses and related extra expenses is defined by the phrases— "caused by damage to \* \* \* property, \* \* \* by perils insured against" and "immediately following damage to \* \* \* [property], by perils insured against." These modifying phrases give rise to conflicting interpretations of the coverage for business interruption losses, and related extra expenses, when—as stipulated in the instant case—such losses and expenses result from a "mechanical breakdown" in machinery. On the one hand, the phrases could be so read as to place a single condition upon recovery for losses and expenses—that is, the

losses be caused by damage to property insured under the first part of the policy. On the other hand, the modifying phrases can be read as placing two separate prerequisites on recovery under the second part of the contract—that is, first, the loss must be caused by damage to property; and second, the loss must be caused by a "peril insured against." In the stipulated facts of the instant case, the first of these interpretations would preclude recovery and the latter interpretation would permit recovery in full.

The District Court denied recovery. It observed that the business interruption endorsement did not cover all business interruption losses, but only those losses following "damage to tangible property, by perils insured against." In effect, the District Court dismissal of the complaint indicates that the intention of the contracting parties was to provide indemnity only for business interruption losses which specifically arise from "insured" property damage under the first section of the policy. Such an interpretation of the contract language construes the phrase "by perils insured against" as modifying "damage to [tangible] property" and creating a single precondition to recovery for losses: the presence of "insured" property damage.

We are of the opinion that the modifying phrases "damage to [tangible] property" and "by perils insured against" may be considered as creating two separate and independent conditions for recovery upon business interruption losses, rather than a single condition of insured property damage, as the District Court held.

The first condition of the presence of "damage to property" is met by the stipulation of the parties that there was a fracture in the air compressor.

The second condition that the losses must be caused by a "peril insured against" is met by the language of § 9 of the basic policy. That section provides that a "mechanical breakdown" is

a "peril excluded" only for the limited purposes of certain damage "to machinery and equipment," its repair and replacement. For all other purposes, a "mechanical breakdown" is a "peril insured against" under the basic policy. Any subsequent damage caused by such breakdown as a piece of machinery breaking off and cracking the walls or causing a fire which destroyed property would be indemnified.

That "a mechanical breakdown" may be treated as a "peril insured against," except for certain limited purposes of the basic property insurance, is indicated by significant variations in the terms of the contract. Paragraphs 8 and 9 of the basic policy define the terms "perils insured against" and "perils excluded;" they read, in part, as follows:

"8. *Perils Insured Against:* Except as hereinafter excluded this policy insures against all risks of direct physical loss of or damage to the property insured.

"9. *Perils Excluded:* There is no liability under this policy for loss or damage:

(a) Caused by: (1) hostile or warlike action. * * *

(b) Caused by nuclear reaction. * * *

* * * * * *

(e) to machinery and equipment, caused by mechanical or electrical breakdown within such machinery or equipment. * * *"

The placement of the phrase "caused by" in the insurance clauses defining "excluded perils" reveals that some perils shall be excluded entirely (e.g., those resulting from warlike action or nuclear reaction), while other shall only be partially excluded (e.g. a mechanical breakdown shall be excluded only insofar as it causes in certain manner damage to machinery and equipment).

Insofar as a peril is wholly and entirely excluded from the first section of the contract (damage from nuclear reac-

tion), any business interruption losses resulting from that excluded peril would not be indemnified because such losses would not result from "damage to property by a peril insured against." On the other hand, if business interruption losses flow from a mechanical breakdown—which is an "excluded peril" for certain limited purposes and "a peril insured against" for all others—it is not clear whether such partially excluded perils are to be treated as "perils insured against." While the only damage to tangible property by the mechanical breakdown was excluded from coverage, this fact does not negate the language of the contract which infers by the variation in the position of the phrase "caused by" that a mechanical breakdown may be generally considered a "peril insured against."

The language of the contract does not unambiguously condition recovery on the presence of insured property damage under the basic policy as the Appellee insurance company argues; nor does it provide sufficient guidance as to whether a mechanical breakdown is to be treated as a "peril insured against" for purposes of business interruption losses. We believe that from the language employed by the insurance company one cannot clearly ascertain that the exclusionary clause is applicable to the facts in this case. Therefore, applying the principles set out earlier in this opinion we hold that ambiguous language is to be construed strictly against the insurance company. It could have drawn up a policy unambiguously conditioning recovery for business interruptions solely upon the occurrence of insured property damage. The insured is entitled to the benefit of the ambiguity created by the insurance company's policy.

The judgment of the District Court is reversed and the case is remanded to the District Court with instructions to enter judgment for Appellant in the sum of $37,637.01, together with interest at the rate of six percent per annum commencing March 11, 1967.

## APPENDIX 1.

### DIFFERENCE OF CONDITIONS FORM

1.  Property Insured: Except as hereinafter excluded this Policy covers:

(a) Real property owned by the Insured while such property is at the location(s) described in paragraph 2 below;

(b) Personal property owned by the Insured and personal property of others for which the Insured is legally liable while such property is at the location(s) described in paragraph 2 below;

(c) The interest of the Insured in improvements and betterments to buildings not owned by the Insured.

\*     \*     \*     \*     \*     \*

8.  Perils Insured Against: Except as hereinafter excluded this Policy insures against all risks of direct physical loss of or damage to the property insured.

9.  Perils Excluded: There is no liability under this Policy for loss or damage:

(a) Caused by: (1) hostile or warlike action. \*  \*  \*

(b) Caused by nuclear reaction. \*  \*  \*

(c) From mysterious disappearance of property or. \*  \*  \*

(d) Caused by or resulting from any dishonest act. \*  \*  \*

(e) To machinery and equipment caused by mechanical or electrical breakdown within such machinery or equipment;

(f) To electrical appliances, devices, or wiring of any kind caused by electrical currents artificially generated which result in sudden and accidental injury to such electrical appliances, devices or wiring;

(g) Caused by or resulting from exploding, rupture, \*  \*  \*.

(h) Caused by errors in design, \*  \*  \*.

(i) By gradual deterioration, \*  \*  \* unless such loss or damage is caused by:

(1) Collapse of a building or structure or a material part thereof; or

(2) Water not otherwise excluded; or

(3) Rigging operations; or

(4) Burglars or thieves;

or unless loss or damage by water or by collapse of a building or structure or a material part thereof ensues. In such an event liability under this Policy shall be only for the ensuing loss.

(j) Caused by insects, vermin, wear and tear, smog \*  \*  \*.

(k) To personal property caused by exposure to elements of the weather. \*  \*  \*

(*l*) Caused by freezing to plumbing. \*  \*  \*

(m) Caused by settling. \*  \*  \*

(n) To retaining walls not constituting part of a building when such loss is caused by ice or water pressure;

(*o*) Caused by flood waters, \*  \*  \*.

(p) Caused by earthquake, \*  \*  \*.

(q) Occasioned by enforcement of any local or state ordinance or law. \*  \*  \*

(r) Caused by a peril as defined and insured against in the following Policy Contract(s):

Firemen's Mutual policy covering against loss from perils of Fire, Extended Coverage, Vandalism & Malicious Mischief and Sprinkler Leakage and Broad Form Explosion.

## APPENDIX 2.

### ENDORSEMENT

This Endorsement is effective February 28, 1966 for attachment to Policy No. S-64-00190 issued to Burdett Oxygen Company by Employers' Surplus Lines Insurance Company.

In consideration of the premium charged for this policy it is agreed that cover shall apply as follows.

1.  Business Interruption

A.  Subject to all its provisions and stipulations, this policy covers against loss resulting directly from necessary interruption of business caused by damage to or destruction of real or personal property, except finished stock, by the peril(s) insured against

\* \* \* \* \* \*

4. Extra Expense

A. Subject to all its provisions and stipulations this policy covers the necessary Extra Expense, as hereinafter defined, incurred by the Insured in order to continue as nearly as practicable the normal operation of the business, immediately following damage to or destruction of the buildings, or contents thereof, by the perils insured against, \* \* \*.